627 So.2d 758 (1993)
LOUISIANA INSURANCE GUARANTY ASSOCIATION, Appellee,
v.
James CLOUD, Appellant.
No. 25,328-CA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
*759 Bobby L. Culpepper, Jonesboro, for appellant.
Mathews, Atkinson, Guglielmo, Marks & Day by Henry G. Terhoeve, Baton Rouge, for appellee.
Before MARVIN, LINDSAY and WILLIAMS, JJ.
WILLIAMS, Judge.
In this worker's compensation case, the claimant, James Cloud, appeals a judgment of the trial court allowing Louisiana Insurance Guaranty Association (LIGA), to unilaterally take the offset of worker's compensation benefits without further judicial proceedings. We find LIGA may unilaterally take the offset of worker's compensation benefits without further judicial proceedings and we affirm that part of the judgment. We amend, however, to find the claimant is entitled to legal interest because of LIGA's abrupt termination of claimant's benefits. As amended, we affirm and remand with directions.

FACTS
On or about July 24, 1980, the claimant, James Cloud sustained injuries while in the course and scope of his employment with Almond Brothers Lumber and Supply, Inc. The parties stipulated that as a result of these injuries, Mr. Cloud is totally and permanently disabled within the terms of the Louisiana Worker's Compensation Law. It was also stipulated that at the time of claimant's injury, his employer maintained worker's compensation insurance with American Mutual Liability Insurance Company which was subsequently placed in liquidation. LIGA paid worker's compensation benefits to claimant after the insolvency of American Mutual. The claimant has received social security benefits since 1984 and the amount the claimant has received has been offset by the amount of worker's compensation benefits received.
On March 1, 1990, LIGA filed the present action in East Baton Rouge Parish for a worker's compensation offset based on Mr. Cloud's receipt of social security benefits. The case was subsequently transferred to Bienville Parish. LIGA filed a motion for summary judgment on May 21, 1991. The *760 trial court denied the motion for summary judgment on June 27, 1991. Thereafter, in March of 1992, LIGA unilaterally took the social security offset set forth in LSA-R.S. 23:1225. On May 26, 1992, Mr. Cloud filed a reconventional demand for back benefits, penalties, interest, reasonable attorney fees and accelerated worker's compensation benefits.
After trial, the court rendered judgment in favor of LIGA, finding that it was entitled to a social security offset of $641.00 per month. The plaintiff's reconventional demand was dismissed with prejudice. The claimant appeals.

DISCUSSION
The claimant does not contest the amount of the social security offset that was taken by LIGA. The claimant's sole contention is that LIGA had no authority to unilaterally take the offset allowed by LSA-R.S. 23:1225. The claimant argues that Bellard v. South Louisiana Contractors, Inc., 563 So.2d 1319 (La.App. 3d Cir.1990), relied upon by the trial court in reaching its conclusion, is clearly contrary to all other jurisprudence regarding the entitlement to the offset under LSA-R.S. 23:1225. He contends that the other cases on this issue have consistently held that a judicial demand is necessary before the offset can be taken. He argues that LSA-R.S. 23:1225 is not self-operating and that an employer is not entitled to unilaterally apply the statute but must make judicial demand for and receive judicial approval for the claimed credit. Holmes v. International Paper Company, 559 So.2d 970 (La.App. 2d Cir.1990); Watson v. Amite Mill. Company, Inc., 560 So.2d 902 (La.App. 1st Cir.1990) (citing Jackson v. Georgia Casualty and Surety Company, 513 So.2d 530 (La.App. 2d Cir.1987), writ denied, 515 So.2d 448 (La. 1987)).
LSA-R.S. 23:1225 provides:
A. The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and worker's compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee's injury.
In Bellard, supra, the Third Circuit analyzed the insurer's right to claim an offset under Section 1225. The court found that judicial demand is only necessary in those cases in which the claimant has been adjudicated totally and permanently disabled. The insurer cannot claim reverse offset until the offset is adjudicated. If there is no adjudication and the employer's insurer is not contesting disability, the insurer may unilaterally, and without the consent of the claimant, claim the reverse offset. Bellard, supra at 1321. We believe this is a correct analysis of the law.
Here, the claimant and LIGA stipulated that appellant was totally and permanently disabled. Since the insolvency of American Mutual Liability Insurance Company, LIGA has made voluntary payments of worker's compensation benefits to the claimant. Under such circumstances, we find that LIGA was at liberty to unilaterally claim the offset allowed by LSA-R.S. 23:1225 without first seeking court authority.
LIGA argues the claimant suffered no loss because of the reverse offset. It asserts in brief that when the Social Security Administration was notified LIGA was taking the offset, they immediately reversed their offset *761 and the claimant's benefits remained the same. In sum, they argue there was no injury or change in circumstances of the claimant. We disagree.
The testimony at trial shows that on March 18, 1992, LIGA notified the claimant and the Social Security Administration that the claimant's worker's compensation benefits were being discontinued because LIGA had elected to claim the $1,225 offset. The evidence further shows that for a six-week period, until the Social Security Administration's records could be adjusted, the claimant received no worker's compensation benefits and only a percentage of his social security benefits. Eventually, the total amount due was made retroactive by the Social Security Administration and eventually paid to the claimant. However, this does not negate the fact that the claimant was financially burdened during this six-week period. The claimant's financial burden was a direct result of LIGA's abrupt termination of his benefits. LIGA should have notified the Social Security Administration of its decision to claim the reverse offset in advance of LIGA's termination of claimant's worker's compensation benefits. The Administration's paperwork could have been initiated immediately and this claimant would not have suffered from a lapse in payment. Since LIGA did not give the Social Security Administration timely notice of its election to claim the reverse offset, it is liable to the claimant for legal interest on each past due installment from the date benefits were terminated until the date the benefits were retroactively paid by the Social Security Administration.
Accordingly, the judgment of the trial court finding LIGA entitled to the social security offset is affirmed. However, the case is remanded to the trial court for a determination of the amount of legal interest due claimant on each installment withheld until such time as the social security disability benefits were retroactively paid to the claimant.
The claimant also asserts that he is entitled to statutory penalties and attorney fees because LIGA's decision to terminate his benefits was arbitrary, capricious and without probable cause. However, in Bowens v. General Motors Corp., 608 So.2d 999 (La.1992), the Supreme Court concluded that the provisions of the Worker's Compensation Law providing for penalties and attorney fees do not apply to LIGA. The Court held that LIGA was not liable for penalties and attorney fees imposed on the insolvent insurer, as these are not covered claims, nor is it responsible for penalties and attorney fees for its own actions, since it is not an insurer for purposes of the worker's compensation statutes which impose penalties and attorney fees on insurers. Thus, LIGA is not liable to the claimant for penalties and attorney fees.

CONCLUSION
For the reasons assigned, the judgment of the trial court is affirmed insofar as it holds that LIGA was entitled to the offset. The case is remanded to the trial court with instructions to compute the legal interest due by LIGA to the claimant on each withheld installment from the due date of each payment until the date the claimant received the retroactive payments from the Social Security Administration.
Costs of these proceedings are assessed against LIGA.
AFFIRMED IN PART; AMENDED IN PART AND REMANDED WITH DIRECTIONS.